**Maly KEO, Appellant,**

v.

**Ban VU, M.D.; Bich Ngoc; Blue Jade Beauty Center; and Qui Phi Beauty Salon, Appellees.**

No. 01–00–00580–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 25, 2002.

Robert Higgason, Law Office of Robert W. Higgason, Houston, for Appellant.

Kenneth Wayne Thelander, T. Marc Calvert, Calvert & Associates, John D. Murphy, Paul S. Francis, Baker & Hostetler, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices RADACK and SMITH.*

## OPINION

SHERRY J. RADACK, Justice.

This is an appeal from a summary judgment rendered against appellant, Maly Keo, in a negligence and medical malpractice case. In a single issue, Keo argues that the trial court erred when it (1) excluded the testimony of Keo's expert witness on the ground he was not qualified to render an opinion in this case under Texas Rule of Evidence 702 and the case law interpreting it and (2) improperly considered the plaintiff's credibility when it determined the expert's report (which was based on facts the plaintiff provided to the expert) constituted any evidence. We reverse the trial court's judgment and remand the cause.

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## Background

Appellee Ban Vu is a physician in Houston who performs cosmetic surgery. Dr. Vu advertises his services in conjunction with the beauty services his wife, appellee Bich Ngoc, provides at salons she owns: appellee Blue Jade Beauty Center in Houston and appellee Qui Phi Beauty Salon in St. Petersburg, Florida. Both Blue Jade and Qui Phi refer patients to Dr. Vu and perform intake services for him. Dr. Vu performs surgery in his office, which is located within the Blue Jade Beauty Center in Houston.

On March 22, 1995, Keo traveled to Houston from her home in Chicago for surgery after an employee at one of Bich Ngoc's beauty centers suggested she needed cosmetic surgery. When she arrived, it was Bich Ngoc who advised Keo about what procedures she should have, suggested a new nose shape for Keo, shaped a prosthesis that Dr. Vu ultimately implanted in Keo's nose, provided preoperative counseling, and set the price for the surgery.

When Keo met with Dr. Vu before the surgery, she informed Dr. Vu she had a prior injection of silicone to her nose bridge, lip, and chin. Dr. Vu informed her that the prior silicone injection could cause additional problems with the surgery, including a propensity to develop an infection. Dr. Vu also explained the other risks associated with the surgery. Keo gave her informed consent in both English and Vietnamese.

The next day, Dr. Vu performed the initial surgery on Keo. He first removed extra skin and fat from Keo's eyelids to alter the appearance of her eyelids and eyes.[1] He then placed a cosmetic implant in her nose. Keo was given postoperative instructions, which included a follow-up appointment in one week. She did not return for the follow-up appointment. Instead, she returned to her home in Chicago. When Keo telephoned Dr. Vu for more medication, Bich Ngoc returned her call and provided Keo with additional postoperative counseling.

In the year following the eyelid and nose implant surgery, Keo moved from Chicago to St. Petersburg. Some time during that year, the prosthesis Dr. Vu implanted in Keo's nose moved. In April 1996, she went to Qui Phi in St. Petersburg. Qui Phi referred Keo back to Dr. Vu for a second surgery.

On May 4, 1996, Dr. Vu performed a second surgery on Keo.[2] He removed the prosthesis, modified its shape, and reinserted it into Keo's nose. Keo contends she had an active sinus and nasal infection when Dr. Vu performed the second surgery and that he did not arrange for postoperative care for Keo with physicians in St. Petersburg. Dr. Vu, however, testified he instructed Keo to return for an office visit in one week, but she did not do so.

After she returned to Florida, Keo sought care from several physicians because of complications arising from the second surgery. Within a month after the second surgery, Keo had seen five or six different physicians in an attempt to alleviate pain and correct the problems. However, the infection that she argues was present when Dr. Vu performed the second surgery had worsened to the point that another physician, Dr. Howery, had to perform a third surgery to remove the prosthetic tip.

Keo filed a lawsuit for negligence and medical malpractice against Dr. Vu and

---

1. Keo apparently has no complaints about the outcome of this procedure.

2. Again, Keo signed an informed consent for the surgery.

negligence against Bich Ngoc, Blue Jade, and Qui Phi. In support of her claims, Keo provided an expert report and deposition testimony from George Gary Card, M.D., a surgeon who is board certified in otolaryngology.

Dr. Vu sought summary judgment under Texas Rule of Civil Procedure 166a(c) and 166a(i) because Dr. Card was not qualified to testify under Texas Rule of Evidence 702 and the case law interpreting the rule. The trial court rendered a take-nothing no-evidence summary judgment on the grounds that Dr. Card was not qualified to testify under the requirements of Rule 702 and there was no scientifically reliable evidence supporting Keo's causes of action.

### Standard of Review

#### A. Whether an Expert is Qualified

■ A two-part test governs whether expert testimony is admissible: (1) the expert must be qualified and (2) the testimony must be relevant and be based on a reliable foundation. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995). The trial court makes the initial determination whether the expert and the proffered testimony meet these requirements. *Robinson,* 923 S.W.2d at 556. The trial court has broad discretion to determine admissibility, and we will reverse only if there is an abuse of that discretion. *Robinson,* 923 S.W.2d at 558; *Harris County Hosp. Dist. v. Estrada,* 872 S.W.2d 759, 762 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

■ A reviewing court cannot conclude that a trial court abused its discretion if, in the same circumstances, it would have ruled differently or if the trial court committed a mere error in judgment. *Robinson,* 923 S.W.2d at 558. The test is not whether the facts present an appropriate case for the trial court's action in the opinion of the reviewing court. *Id.* We will gauge an abuse of discretion by whether the trial court acted without reference to any guiding rules or principles. *Id.* Thus, a trial court enjoys wide latitude in determining whether expert testimony is admissible. Harvey Brown, *Procedural Issues Under* Daubert, 36 HOUS. L.REV. 1133, 1159 (1999). However, when there is proof of a physician's expertise in the particular areas involved in the case, the trial court abuses its discretion by refusing to qualify the physician as an expert witness. *Blan v. Ali,* 7 S.W.3d 741, 747 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Spivey v. James,* 1 S.W.3d 380, 385 (Tex.App.-Texarkana 1999, pet. denied).

#### B. No Evidence Summary Judgment Standard of Review

■ We review a no-evidence summary judgment by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i); *KPMG Peat Marwick,* 988 S.W.2d at 748; *Greathouse v. Alvin Indep. Sch. Dist.,* 17 S.W.3d 419, 423 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

■ When, as here, the summary judgment states the ground or grounds on which the trial court based its decision to render summary judgment, we will affirm the summary judgment if one of those grounds is meritorious. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *State Farm Mut. Auto.*

*Ins. Co. v. Nguyen,* 920 S.W.2d 409, 410 (Tex.App.-Houston [1st Dist.] 1996, no writ). The summary judgment in this appeal states that the grounds on which summary judgment was based is that Dr. Card was not qualified as an expert under Rule 702 and that there was "no scientifically reliable evidence" to support Keo's negligence claims. Therefore, we review whether the trial court abused its discretion when it determined: (1) Dr. Card was not qualified under Rule 702 to provide expert testimony and (2) Dr. Card's testimony was not "scientifically reliable evidence." We then look to whether the no-evidence summary judgment was proper.

### Was Dr. Card Qualified?

In a negligence case, the negligent act must be the proximate cause of the injury. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995). To establish causation in a personal-injury case, a plaintiff must prove the defendant's conduct caused an event and that event caused the plaintiff to suffer compensable damages. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). The causal link between the event on which suit is based and the plaintiff's injuries must be shown by competent evidence. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 732 (Tex.1984). A jury may decide the required causal nexus between the event on which suit is based and the plaintiff's injuries when (1) general experience and common sense will enable a layperson to fairly determine the causal nexus, (2) expert testimony establishes a traceable chain of causation from injuries back to the event, or (3) expert testimony shows a probable-cause nexus. *Weidner v. Sanchez,* 14 S.W.3d 353, 370 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Blankenship v. Mirick,* 984 S.W.2d 771, 775 (Tex.App.-Waco 1999, pet. denied).

In deciding if an expert is qualified, trial courts "must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex.1998) (quoting *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex.1996)). Texas Rule of Evidence 702 permits a witness who is qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact issue. Whether an expert is qualified is, under Texas Rule of Evidence 104(a), a preliminary question to be decided by the trial court. "[T]he party offering the expert's testimony bears the burden to prove that the witness is qualified under [Rule] 702." *Gammill,* 972 S.W.2d at 718; *Broders,* 924 S.W.2d at 151. The offering party must demonstrate that the witness possesses special knowledge as to the very matter on which the witness proposes to give an opinion. *Gammill,* 972 S.W.2d at 718; *Broders,* 924 S.W.2d at 152–53. The trial court's acceptance of a witness's qualifications as an expert is reviewable for an abuse of discretion. *Gammill,* 972 S.W.2d at 718–19; *Broders,* 924 S.W.2d at 151.

In *Broders,* the issue was whether the trial court abused its discretion in excluding the testimony of an emergency physician who opined that three defendant emergency physicians and the defendant hospital caused a patient's death by failing to diagnose plaintiff's head injury. 924 S.W.2d at 149. The supreme court held that the district court did not abuse its discretion in excluding the opinion of the plaintiff's expert regarding causation because, although the expert plainly had greater knowledge of medicine generally

than a lay person, he did not have specialized knowledge on the precise subject of causation. *Id.* at 153–54. The court based its decision on the increasingly specialized and technical nature of medicine, saying, "there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question." *Id.* at 152. The court also observed that:

> [w]hen a party can show that a subject is substantially developed in more than one field, testimony can come from a qualified expert in any of those fields. *Porter v. Puryear*, 153 Tex. 82, 262 S.W.2d 933, 936 (Tex.1953). *See also Hersh v. Hendley*, 626 S.W.2d 151, 154–55 (Tex.App.-Fort Worth 1981, no writ) (orthopedic surgeon could testify in suit against podiatrist on the standard of care for podiatric surgery since it "was common throughout the medical profession.")

*Id.* at 154.

Courts of appeals have also recognized that an expert witness need not be a specialist in the particular branch of the medical profession for which the testimony is offered. *See Hernandez v. Altenberg*, 904 S.W.2d 734, 738 (Tex.App.-San Antonio 1995, writ denied); *Simpson v. Glenn*, 537 S.W.2d 114, 116 (Tex.Civ.App.-Amarillo 1976, writ ref'd n.r.e.). Indeed, trial courts may qualify a medical witness of a different specialty to testify if the witness has practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those confronting the malpractice defendant. *Blan*, 7 S.W.3d at 745; *see Marling v. Maillard*, 826 S.W.2d 735, 740 (Tex. App.-Houston [14 th Dist.] 1992, no writ) (citing *Bilderback v. Priestley*, 709 S.W.2d 736, 740 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.)). For example, an orthopedic surgeon is qualified to testify as to the standard of care for a radiologist because the two professions work closely together and their specialties are intertwined. *See Silvas v. Ghiatas*, 954 S.W.2d 50, 54 (Tex. App.-San Antonio 1997, writ denied). Likewise, a general surgeon was permitted to testify regarding the standard of care for postoperative procedures performed by a gynecologist because postoperative procedures are common to both fields. *See Simpson*, 537 S.W.2d at 116–18. In contrast, a pediatrician who admitted he knew little about gynecological matters was not permitted to testify against an obstetrician/gynecologist about postsurgical pain in a patient's pubic area. *See Roberson v. Factor*, 583 S.W.2d 818, 821 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). Accordingly, the law is that if the subject matter is common to and equally recognized and developed in *all* fields of practice, any physician familiar with the subject may testify as to the standard of care. *See Blan*, 7 S.W.3d at 745–46; *see, e.g., Hersh v. Hendley*, 626 S.W.2d 151, 154 (Tex.Civ. App.-Fort Worth 1981, no writ) (taking medical history, discharging patient); *Garza v. Keillor*, 623 S.W.2d 669, 671 (Tex. Civ.App.-Houston [14 th Dist.] 1981, writ ref'd n.r.e.) (infection process); *Sears v. Cooper*, 574 S.W.2d 612, 615 (Tex.Civ.App.-Houston [14th Dist.] 1978, writ ref'd n.r.e.) (use of diuretic).

In this case, Keo offered the testimony of Dr. Card in support of her claims of negligence against Dr. Vu. Dr. Card is board certified in otolaryngology. The evidence shows that Dr. Card practices ear and throat surgery at the Houston Ear, Nose, and Throat Clinic, where he is a partner. He received his doctor of medicine from Baylor College of Medicine in 1971. He then did an internship at Baylor-affiliated hospitals before serving two years as a flight surgeon in the United

States Air Force. After being discharged from active duty, Dr. Card did a residency in general surgery with Dr. Michael DeBakey. He completed his residency in otorhinolaryngology at a Baylor-affiliated hospital.

After completing his training, Dr. Card taught otolaryngology at Baylor College of Medicine from 1978 until 1996. He served as a volunteer teacher in otolaryngology with the University of Texas Family Practice Residency Program from 1984 to the present. In the early years of his practice, Dr. Card performed rhinoplasties, the same surgical procedure Dr. Vu performed on Keo. He currently practices general otolaryngology, which "includes reconstructive ear surgery, sinus surgery, cancer surgery, laryngeal, throat surgery, vocal cord surgery, ... [and][a]ny medical surgical condition in the head and neck area other than cosmetic surgery." He has been board certified in otolaryngology since 1978. He performs surgery every week.

Keo's complaints against Dr. Vu relate to surgical practices employed generally, such as lack of preoperative and postoperative counseling and care. In addition, she contends Dr. Vu (1) performed the second operation when Keo had an active infection and (2) did not appropriately treat her postoperative infection. Unlike the emergency physician in *Broders*, this record evidences that operative procedures generally and the infection process related to surgery on the head in particular are within Dr. Card's expertise. That Dr. Card does not currently perform rhinoplasties or other cosmetic surgery does not alone render him unqualified to assert an opinion regarding the standard of care for surgery on the head and neck generally or to as-

sert an opinion regarding issues that are common to all surgeries, including the adequacy of preoperative and postoperative counseling and the treatment of postoperative infections.[3] This is especially true in light of the evidence that he regularly performs surgery on the head and neck. Because there is proof that Dr. Card had expertise and actual experience regarding the specific issues of the standard of care for head and neck surgeries and the standard of care for surgical procedures in general, we hold the trial court abused its discretion when it excluded his expert testimony on the ground he was not qualified.

### Was Dr. Card's Testimony "Scientifically Reliable Evidence?"

In their motion, the appellees also argued Dr. Card's testimony was inherently unreliable and insufficient evidence of causation because (1) Dr. Card relied on Keo's testimony that her nose was infected before the second surgery, that Keo's testimony was not credible, and there was no objective proof that Keo's nose was infected as she said it was and (2) Dr. Card did not cite to any studies or literature in forming his opinion.

### A. Standard of Review

An expert may testify on scientific, technical, or other specialized subjects if the testimony would assist the fact finder in understanding the evidence or determining a fact issue. *See* TEX.R. EVID. 702. To assist the fact finder, the proposed expert testimony must be relevant and reliable. *Gammill,* 972 S.W.2d at 720. When the expert's underlying scientific technique or principle is unreliable, the expert's opinion is no more than subjective

---

3. If Keo's complaints went to issues unique to cosmetic surgery, our opinion here might have a different result.

belief or unsupported speculation and is inadmissible. *Id.; Robinson,* 923 S.W.2d at 557.

 Whether an expert's testimony is reliable is a preliminary question for the trial court. *See* Tex.R. Evid. 104(a); *Gammill,* 972 S.W.2d at 718. As we discussed above, the expert must possess "special knowledge as to the very matter on which he proposes to give an opinion." *See Gammill,* 972 S.W.2d at 718. Although the factors the trial court may consider in making this determination will differ in each case, some factors include, but are not limited to, (1) the extent to which the theory has been tested, (2) the extent to which the technique relies on the expert's subjective interpretation, (3) whether the theory has been subject to peer review and/or publication; (4) the technique's potential rate of error, (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community, and (6) the nonjudicial uses that have been made of the theory or technique. *Id.* at 720.

 The trial court is not to determine whether the expert's conclusions are correct, but only whether the analysis used to reach them is reliable. *Id.* at 728. An expert's testimony can be unreliable even when the underlying data is sound if the expert draws conclusions from that data based on flawed methodology. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 721–29 (Tex.1997). There also may be "simply too great an analytical gap between the data and the opinion proffered" for the opinion to be reliable. *Gammill,* 972 S.W.2d at 726. We review the ruling excluding an expert's testimony for abuse of discretion. *Id.* at 718–19.

## B. Analysis

 The appellees argued in the trial court that Dr. Card's opinion constituted no evidence under *Havner* for several reasons. In response, Keo contends that *Havner* does not apply and therefore does not support the trial court's exclusion of Dr. Card's testimony. We agree with Keo that *Havner* does not support the exclusion of Dr. Card's testimony as scientifically unreliable evidence.

First, the appellees argue that because Keo is a convicted felon, her testimony that her nose was infected before the second surgery is not credible. The appellees go on to argue that because there is no objective evidence of infection before the second surgery, there is no reliable foundation for Dr. Card's opinion regarding causation.

 In cases in which the credibility of a witness is likely to be a dispositive factor in resolution of a case, summary judgment is inappropriate. *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989); *McClellan v. Ritz–Carlton Hotel Co.,* 961 S.W.2d 463, 465 (Tex.App.-Houston [1st Dist.] 1997, no writ). Further, factual weaknesses underlying an expert's causation opinion generally go to the testimony's weight, rather than its admissibility, and the opinion is no evidence only if based *completely* upon speculation and surmise. *See Onwuteaka v. Gill,* 908 S.W.2d 276, 283 (Tex.App.-Houston [1st Dist.] 1995, no writ); *cf. Schaefer v. Tex. Employers' Ins. Ass'n,* 612 S.W.2d 199, 204–05 (Tex. 1980) (expert's medical opinion constituted no evidence because it was based on speculation and surmise rather than reasonable medical probability). Therefore, the credibility of Keo's testimony regarding the presence of infection in her nose before the second surgery was an issue that was not properly decided on summary judgment. Likewise, the determination that Dr. Card's opinion was inherently unreliable because it was based on Keo's testimony

was also not appropriate for summary judgment because Keo's credibility was itself a fact issue. The credibility of Keo's testimony and the reliability of Dr. Card's opinion go to the weight, rather than the admissibility, of the evidence.

■ The appellees also argue that Dr. Card's opinion was inherently unreliable and, therefore, no evidence, because he did not cite to any authoritative literature or medical studies to support his criticisms of Dr. Vu's actions. Dr. Card's testimony establishes he was familiar with preoperative and postoperative procedures for head and neck surgery because of his knowledge, skill, experience, training, and education in the field of otolaryngology. *See* Tex.R. Evid. 702. The appellees do not cite, and we are not aware of, any authority that an expert must refer to authoritative literature or medical studies in order for the expert's opinion to be reliable. The fact that Dr. Card did not refer to authoritative literature or medical studies in forming his opinion regarding such general subjects as preoperative and postoperative procedures and whether it was advisable to perform an operation on the nose when an infection is present does not render his methodology flawed.

The function of the trial court in this instance was not to determine if Dr. Card's conclusion was correct, but to determine whether his analysis, based on the evidence, was reliable. The trial court abused its discretion when it concluded Dr. Card's analysis was not sufficiently reliable to be admitted into evidence.

### The No–Evidence Summary Judgment

■ Because we have held the trial court should have considered Dr. Card's report and deposition testimony, we now look to whether there was more than a scintilla of evidence to raise a genuine issue of material fact. We review the no-evidence summary judgment by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *See KPMG Peat Marwick,* 988 S.W.2d at 748; *Flameout,* 994 S.W.2d at 834. A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact. *See* Tex.R. Civ. P. 166a(i); *KPMG Peat Marwick,* 988 S.W.2d at 748; *Greathouse,* 17 S.W.3d at 423.

Dr. Card's expert report sets forth the general standard of care for surgical procedures and opines how Dr. Vu breached the standard of care by failing to provide adequate preoperative and postoperative counseling and care, deviating from accepted record-keeping practices, and failing to properly manage Keo's postoperative infection. In his deposition, Dr. Card criticized Dr. Vu's pre- and postoperative practices and criticized Dr. Vu for performing the second operation while Keo had an infection. Although there are several inconsistencies in Dr. Card's testimony, we must construe the record in the light most favorable to the nonmovant and disregard all contrary evidence and inferences in reviewing a no-evidence motion for summary judgment. *Flameout,* 994 S.W.2d at 834. Under this standard, we hold there is more than a scintilla of evidence to support Keo's claims against Dr. Vu. Therefore, we sustain issue one.

### Conclusion

We reverse the judgment and remand the cause to the trial court for further proceedings.