NO. 07-04-0591-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 1, 2006



______________________________




BOBBIE ADAMS HENSARLING, Individually and as Executrix of the 


 Estate of Charles Hensarling, CHERYL ANN JENNINGS, KEITH RANDALL HENSARLING, and CATHERINE BETH BRANSON, 



 APPELLANTS


v.



COVENANT HEALTH SYSTEM d/b/a COVENANT MEDICAL CENTER


 and COLLIN LANGLITZ, 


 APPELLEES


 _________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-520,034; HON. MACKEY HANCOCK, PRESIDING



_______________________________



Before REAVIS and CAMPBELL, JJ., and BOYD, S.J. (1)

MEMORANDUM OPINION


 Appellant Bobbie Adams Hensarling, individually and as executrix of the estate of
Charles Hensarling, Cheryl Ann Jennings, Keith Randall Hensarling, and Catherine Beth
Branson (collectively referred to as Hensarling) appeal from an order striking their medical
expert and granting summary judgment to appellees Covenant Health System d/b/a
Covenant Medical Center (Covenant) and Collin Langlitz (Langlitz) with respect to
Hensarling's claims for health care liability. The granting of summary judgment was
premised on the fact that without the testimony of Dr. Lawson Bernstein, Hensarling could
not raise a fact issue on the causation element of the claims. Therefore, the issue before
us is whether the trial court acted properly in striking Bernstein as an expert witness
because he was not qualified to testify on the element of causation. We affirm the
judgment of the trial court. 

 Background

 Charles Hensarling was admitted to Covenant on August 8, 2000, with a
subarachnoid hemorrhage. Successful surgery was performed with respect to that
condition. However, Charles remained in the hospital for the next three weeks suffering
from complications such as pneumonia, respiratory failure, intermittent atrial fibrillation,
central line sepsis, deep vein thrombosis, and confusion. He was in intensive care until
September 1, at which time he was transferred to a regular room. 

 Around 11:45 that evening, Charles became agitated. Langlitz, the nurse on duty,
gave him a five mg. dose of Haldol intravenously pursuant to the order of Dr. Matthew
Wills. Shortly thereafter, Charles' oxygen saturation decreased to 60. Langlitz called Wills'
office and spoke to his nurse practitioner, who arrived at the hospital. Thereafter, Charles
was transferred back to intensive care and was intubated by Dr. Larry Warmoth. His
respiratory problems improved for a while but several hours later, his condition deteriorated
and he died around 6:30 a.m. 

 Hensarling sued the hospital, Langlitz, and Wills, alleging that Charles died as a
result of an adverse reaction to Haldol which Langlitz failed to recognize and treat. (2) In
support thereof, Hensarling submitted the expert report of Bernstein. The defendants
moved to dismiss the lawsuit, alleging Bernstein was not qualified to render the opinions
he gave in his report. The trial court initially denied the motions. However, the defendants
again moved to strike Bernstein as an expert and moved for summary judgment. The trial
court granted the motion on the basis that Bernstein was not qualified to render an opinion
on causation.

 Standard of Review

 A witness qualified as an expert by knowledge, skill, experience, training, or
education may testify in the form of an opinion. Tex. R. Evid. 702. However, a licensed
doctor is not automatically qualified to testify as an expert on every medical question. 
Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996); Cresthaven Nursing Residence v.
Freeman, 134 S.W.3d 214, 233 (Tex. App.--Amarillo 2003. no pet.). Nevertheless, an
expert may be qualified to testify even though he is not a specialist in the particular branch
of medicine for which the testimony is offered, Blan v. Ali, 7 S.W.3d 741, 745 (Tex. App.--Houston [14th Dist.] 1999, no pet.), as long as he has sufficient familiarity with the specific
subject matter. Broders v. Heise, 924 S.W.3d at 153. Thus, the trial court must measure
the doctor's expertise against the opinion being offered. SunBridge Healthcare Corp. v.
Penry, 160 S.W.3d 230, 237 (Tex. App.--Texarkana 2005, no pet.); Marvelli v. Alston, 100
S.W.3d 460, 474 (Tex. App.--Fort Worth 2003, pet. denied). The offering party has the
burden to establish that the witness is qualified, Gammill v. Jack Williams Chevrolet, Inc.,
972 S.W.2d 713, 718 (Tex. 1998), and we review the trial court's decision to strike the
testimony of an expert for abuse of discretion. Broders v. Heise, 924 S.W.2d at 151.

 Analysis

 Bernstein's curriculum vitae represents that he maintains a practice in "[f]orensic &
[n]europsychiatric consulting . . . with expertise in the assessment and treatment of closed
head injuries, stroke, toxic environmental exposure, chronic pain conditions and other
neurological/neuropsychiatric conditions." He testified at his deposition that he practices
"in the realm of neuropsychiatry, which is the practice of psychiatry when it's interfaced with
neurology, internal medicine and . . . neurotoxicology." The primary focus of his practice
is on the pharmacological management of those problems, which includes prescribing
drugs such as Haldol and the effects of those drugs. He did his residency in general
psychiatry and is board certified by the American Board of Psychiatry and Neurology in
psychiatry and by the American College of Forensic Medicine in forensic psychiatry. He
also teaches neuropsychiatry and trains neurosurgeons in identification and management
of drug and alcohol withdrawal and the identification and management of adverse
neurological sequelae from that condition, management of delirium, and informed consent
issues. The gist of his opinion on causation was that the Haldol caused a dystonic reaction,
the dystonic reaction caused respiratory distress, the respiratory distress caused a period
of hypoxia, the hypoxia produced ARDS (acute respiratory distress syndrome) and the
ARDS caused the death of Charles. However, Dr. Warmoth, who signed the death
certificate, determined the cause of death to be a pulmonary embolism. (3) 

 Bernstein testified that in terms of management of ARDS, he has provided
neuropsychiatric management for patients that have ARDS in the hospital but leaves the
management of the ARDS itself in the hands of specialists. He has had the opportunity to
diagnose ARDS on his own but rarely does so. Further, if he suspected that a patient had
a pulmonary embolus, he would bring it to the attention of the team of physicians he works
with but would not generally be the one to provide the treatment, although he has
diagnosed pulmonary embolus probably over a hundred times in his career. Bernstein
conceded that pulmonologists have more training than he does in matters related to the
lungs but contended that, under this unique set of circumstances, his experience and
training are equivalent to those of a pulmonologist. Generally in his practice, he is not
asked to determine the cause of death. 

 General experience in a specialized field is not sufficient to qualify a witness as an
expert. Reed v. Granbury Hosp. Corp., 117 S.W.3d 404, 410 (Tex. App.--Fort Worth 2003,
no pet.). It must be shown that the doctor possesses special knowledge as to the very
matter on which he proposes to give an opinion. Keo v. Vu, 76 S.W.3d 725, 731 (Tex.
App.-- Houston [1st Dist.] 2002, pet. denied). Bernstein's theory of causation involved a
sequential series of conditions stemming initially from a reaction to Haldol and ultimately
leading to his death. However, several steps in that sequential series involved the
development of specific pulmonary conditions which could develop without a reaction to
Haldol. While Bernstein had specific experience with the administration of Haldol and its
effects, the record shows he had general experience with both ARDS and pulmonary
embolus in terms of providing psychiatric assistance to patients suffering from those
problems. The trial court could have found that Bernstein did not have the specialized
knowledge necessary to establish the element of causation. 

 Hensarling relies heavily on our opinion in Cresthaven Nursing Residence v.
Freeman, 134 S.W.3d 214 (Tex. App.--Amarillo 2003, no pet.) for the proposition that "the
opinions of other doctors who agree with the expert in question are relevant to evaluating
the expert's qualifications and the reliability of his opinions." However, we noted the cause
of death offered by other doctors in that case only for the purpose of showing that the
opinions offered did not require an expertise peculiar to the fields of cardiology or urology
in determining that the trial court did not abuse it discretion in admitting the testimony. Id.
at 234. Whether or not we might have decided the matter differently from the trial court is
not the test. The propriety of the trial court's admission or exclusion of expert testimony is
tested against an abuse of discretion which means whether the court acted without
reference to guiding principles or rules. Daniels v. Vance, 175 S.W.3d 889, 894 (Tex. App.--Texarkana 2005, no pet.); Keo v. Vu, 76 S.W.3d at 730. We cannot find that it did so here.

 Without the testimony of Bernstein on causation, Hensarling has failed to produce
more than a scintilla of evidence to defeat the no-evidence motion for summary judgment. (4)
See Crocker v. Paulyne's Nursing Home, Inc., 95 S.W.3d 416, 423 (Tex. App.--Dallas
1992, no writ). Accordingly, we must and do affirm the judgment of the trial court.


 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2005). 
2. Wills was later dismissed from the lawsuit. 
3. Without an autopsy, which the family apparently declined, this cause of death
cannot be confirmed. 
4. The standard of review for a no-evidence motion for summary judgment is fully
discussed in Kimber v. Sideris, 8 S.W.3d 672, 674-75 (Tex. App.--Amarillo 1999, no pet.).



alse" Priority="68" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Grid 2 Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO.  07-10-0104-CR

IN THE
COURT OF APPEALS

FOR THE
SEVENTH DISTRICT OF TEXAS

AT
AMARILLO

PANEL B

JANUARY
12, 2011

_______________________________

OSCAR
HUERTA,

                                                            Appellant

v.

THE
STATE OF TEXAS,

                                                            Appellee

_______________________________

FROM THE
403RD DISTRICT COURT OF TRAVIS COUNTY;

NO.
D-1-DC-09-301111; HON. BRENDA KENNEDY, PRESIDING

_____________________________

Memorandum
Opinion

_____________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK,
JJ.

           
Appellant, Oscar Huerta, appeals
from convictions for aggravated sexual assault of a child, indecency with a
child by contact and indecency with a child by exposure.  Through a single
issue, he contends that his guilty plea was involuntary because the trial court
failed to admonish him about the possibility of his deportation and his
obligation to register as a sex offender.  The State concedes the former
constitutes harmful and, therefore, reversible error but disputes the accuracy
of the latter issue.  Given the States
concession and the evidence of record indicating that appellant was a Mexican
national when he pled guilty to the various counts, we reverse the judgment and
remand the cause.  See VanNortick v. State, 227 S.W.3d 706, 714
(Tex. Crim. App. 2007) (holding reversal appropriate when the record showed that
the defendant was not a citizen at the time of his guilty plea).  Our
disposition of the cause relieves us from having to address appellants
remaining argument.  

 

                                                                                    Brian Quinn

                                                                                    Chief Justice

Do not publish.