Reversed and Remanded and Memorandum Opinion
filed December 3, 2009.

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00643-CV

___________________

 

JUANITA WALKER, Appellant

 

V.

 



APRIL RANGEL, Appellee

 



 

 

On Appeal from the County Civil Court at Law No. 4

Harris County, Texas



Trial Court Cause No. 848124

 



 

 

M E M O R A N D U M  O P I N I O N

Juanita Walker sued April Rangel, claiming personal
injury from an automobile accident.  A jury found Rangel’s negligence did not
proximately cause the accident.  Walker now appeals, contending the trial court
erred in admitting opinion testimony of Senior Police Officer Daryl Woods of
the Houston Police Department and Rangel’s accident reconstruction expert, Dale
King.  

After a thorough review of the appellate record, we conclude
the trial court erroneously admitted the following testimony:

·       
Officer Woods’s conclusion regarding
the points of impact on the vehicles;

·       
Officer Woods’s conclusion
regarding location of the initial impact where he found vehicle debris;

·       
Officer Woods’s conclusion that Walker
drove into a lane occupied by Rangel’s vehicle;

·       
King’s conclusion that Walker
drove into a lane occupied by Rangel’s vehicle; and

·        
King’s conclusion that the
accident most likely occurred where vehicular debris was found.

We further conclude that the trial court properly
admitted King’s following opinions:

·       
The initial impact did not occur
at the intersection; and

·       
The accident resulted from a
side-to-side impact.  

We hold the erroneously-admitted opinions probably
resulted in rendition of an improper judgment.  Accordingly, we reverse the
trial court’s judgment and remand this case for a new trial.[1]

I.   Factual and Procedural Background

The automobile accident occurred in Houston, Texas, on
a feeder road of the Southwest Freeway, U.S. Route 59, during July 2005.  According
to a police diagram, the feeder road has at least three lanes of traffic at
this location.  At or near the 11100 block of the Southwest Freeway, Roark Road
intersects with the right or outside lane of the feeder road (the “intersection”).
 Vehicles approaching the feeder road from Roark come to a stop sign and must
turn right onto the one-way feeder road.  A hotel parking lot is on the right side
of the feeder road, the middle of which is around 145 feet down the feeder road
from the intersection.    

At the time of the accident, Walker was driving a
taxi cab with passengers Dr. Liliana Karim and her child.[2]  Walker claimed she was in
the middle lane of the feeder road when she saw something coming from her
right.  Walker testified that she turned her cab “a little bit” to the left to
avoid the incoming object, but was struck by Rangel, who was driving a truck.  Walker
claimed that the left side of Rangel’s front bumper struck near the right rear-passenger
door of her cab, propelling the front of her cab to the right, where her front,
right-side fender and panel were struck by the front of Rangel’s truck.  Walker
further testified that Rangel hit her at a “T-bone” angle rather than a
sideswipe: “[I]t’s not like [Rangel] was coming side by side with me.  She’s
coming from an angle.  She’s coming off a side street.”  According to Walker, Rangel
entered the feeder road at Roark, and the impact occurred at or very near that
intersection.  Walker also testified that the impact propelled her cab into the
far left lane.  After Walker regained control, she drove her vehicle into the
hotel parking lot.

Rangel testified she stopped on Roark, checked to see
if traffic was coming from the left, and then turned into the far right-hand
lane of the feeder road.  According to Rangel, someone collided with the side
of her truck as she drove down the feeder road, but she did not see the
impacting vehicle or how the impact occurred because her truck is tall.  Nevertheless,
Rangel described the impact as “side-to-side” and denied the front corner of
her truck hit Walker at an angle.  Rangel stated she reacted by turning right
to avoid further collision, causing her to drive over the feeder road curb and
into a car parked in the hotel parking lot.  Rangel stepped out of her truck
and saw Walker driving toward the hotel parking lot.  Rangel maintained that the
accident did not occur at the intersection, but farther down the feeder road.    

Rangel presented the deposition testimony of Officer
Woods.  Walker objected to Officer Woods’s qualifications to offer expert opinion
testimony.  The trial court overruled Walker’s objection.  Rangel also
presented the deposition testimony of King, an accident reconstruction expert. 
Walker objected regarding reliability of the data on which King based his
opinions.  Again, the trial court overruled Walker’s objection.

After hearing evidence and arguments of counsel, the
jury found Rangel’s negligence, if any, did not proximately cause the
occurrence in question.  The trial court rendered judgment on the jury’s
verdict.

II.   Issue Presented and Standard of Review

In a single issue, Walker contends the trial court
erred in admitting Officer Woods’s and King’s opinion testimony over her
objections, probably causing rendition of an improper judgment.

The trial court has broad discretion to determine
admissibility of expert testimony; as such, a reviewing court will reverse only
if there is an abuse of that discretion.  Helena Chem. Co. v. Wilkins,
47 S.W.3d 486, 499 (Tex. 2001).  A trial court abuses its discretion only when
it acts in an unreasonable and arbitrary manner, or when it acts without
reference to any guiding principles.  Champion v. Great Dane Ltd. P’ship,
286 S.W.3d 533, 543 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  We must
uphold the trial court’s evidentiary ruling if there is any legitimate basis
for it.  Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.
1998).            

Texas Rule of Evidence 702, entitled “Testimony by
Experts,” provides, “If scientific, technical, or other specialized knowledge
will assist the trier of fact to understand the evidence or to determine a fact
in issue, a witness qualified as an expert by knowledge, skill, experience,
training, or education may testify thereto in the form of an opinion or
otherwise.”  Tex. R. Evid. 702.  Expert testimony is admissible if the expert
is qualified and the testimony is relevant and based on a reliable foundation. 
Helena Chem. Co., 47 S.W.3d at 499.  Once the party opposing the expert
testimony objects, the proponent bears the burden of demonstrating
admissibility of the testimony.  See E.I. du Pont de Nemours & Co., Inc.
v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995).

III.  
Analysis

A.        Officer
Woods’s Qualification to Offer Opinion Testimony

We begin by addressing whether the trial court abused
its discretion in allowing Officer Woods to testify as an accident
reconstruction expert.  Officer Woods testified he interviewed Walker and
Rangel at the accident scene.  He observed the vehicles’ damage and found
vehicular debris on the road.  He spoke with another officer at the scene and
with someone from accident division, both of whom assisted him in the
investigation.  Based on his investigation, Officer Woods determined there were
two points of impact; the first occurred where debris was found approximately
30 or 40 yards from the intersection.  He also opined that Walker entered the
lane occupied by Rangel.  His diagram, which was admitted into evidence,
reflected these opinions.

The party calling the expert witness must show he is
qualified by possessing “knowledge, skill, experience, training, or education”
to testify on the specific issue before the court.  See Gammill v. Jack
Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998).  Rule 702
permits expert testimony if such testimony would assist the trier of fact in
understanding the evidence or determining a fact issue.  Tex. R. Evid. 702; see
Gammill, 972 S.W.2d at 718.  Whether an expert is qualified under Rule 702
is a preliminary matter to be determined by the trial court.  See Gammill,
972 S.W.2d at 718.  A trial court “must ensure that those who purport to be
experts truly have expertise concerning the actual subject matter about which
they are offering an opinion.”  Id. at 719 (quoting Broders v. Heise,
924 S.W.2d 148, 152 (Tex.1996)).  “General experience in a specialized field is
insufficient to qualify a witness as an expert.”  General Motors Corp. v.
Burry, 203 S.W.3d 514, 526 (Tex. App.—Fort Worth 2006, pet. denied).  If
the expert is not qualified to offer a particular opinion in a particular case,
then the expert’s testimony is not admissible because it does not rise above
mere speculation, and, accordingly, does not offer genuine assistance to the
jury.  See Broders, 924 S.W.2d at 153. 

“As a general rule, police officers, based on their
position as police officers alone, are not qualified to render opinions
regarding accidents.”  Pilgrim’s Pride Corp. v. Smoak, 134 S.W.3d 880,
891 (Tex. App.—Texarkana 2004, pet. denied).  “[P]olice officers are qualified
to testify regarding accident reconstruction if they are trained in the science
and possess the high degree of knowledge sufficient to qualify as an expert.”  Id. 


Relative to his qualifications, Officer Woods
testified he had received only basic training in accident investigation.  He
stated his hand-drawn accident diagrams were not as precise as those drawn by
someone from accident division.  Officer Woods estimated  he has investigated
approximately 150 traffic accidents per year during his twenty years on the
force.  However, Officer Woods failed to explain how this experience imbued him
with expertise in accident reconstruction.  Instead, he admitted several times that
he conferred with someone from accident division during his investigations. 
Finally, Officer Woods admitted he is not an accident reconstruction expert.  In
light of this testimony, we conclude the trial court abused its discretion by
overruling Walker’s qualification objection.  See Clark v. Cotton,
573 S.W.2d 886, 887–88 (Tex. Civ. App.—Beaumont 1978, writ ref’d n.r.e.)
(officer with eight and one-half years’ experience and who had investigated
over 350 accidents did not qualify as expert when he had no specialized
training in accident reconstruction).  Accordingly, we hold the trial court
erred in admitting Officer Woods’s opinion testimony.

B.        Reliability
of Data Supporting Accident Reconstruction Expert’s Opinion   

Walker next complains about the trial court’s overruling
her objection that the data supporting King’s opinions was unreliable.

In determining the reliability of an expert’s
methodology and underlying data, the trial court may consider several
non-exclusive factors, including (1) the extent to which the expert’s theory
has been or could be tested; (2) the extent to which his technique relies upon
subjective interpretation; (3) whether his technique has been subjected to peer
review and/or publication; (4) the potential error rate for the technique; (5)
whether the expert’s underlying theories or techniques have been generally
accepted as valid by the relevant scientific community; and (6) the
non-judicial uses that have been made of the theory or technique.  See
Robinson, 923 S.W.2d at 557.  In addition, a trial court may give weight to
the expert’s skill and experience when appropriate to do so.  See Gammill,
972 S.W.2d at 726.  If there is an analytical gap between the expert’s
conclusions and the underlying data upon which he relies, his expert testimony
may be unreliable and inadmissible.  See id.  

The Texas Supreme Court has recognized “‘the Robinson
factors are not always useful in evaluating expert testimony in automobile
cases.’”  Ford Motor Co. v. Ledesma, 242 S.W.3d 32, 39 (Tex.
2007) (quoting Cooper Tire & Rubber Co. v. Mendez, 204 S.W.3d 797,
801 (Tex. 2006)).  Courts should bear in mind “‘there must be some basis for
the opinion offered to show its reliability,’” and “‘[a]n expert’s bare opinion
will not suffice’ and is unreliable if ‘based solely upon his subjective
interpretation of the facts.’”  Id. (quoting Volkswagen of America,
Inc. v. Ramirez, 159 S.W.3d 897, 906 (Tex. 2004); Gammill,
972 S.W.2d at 726). 

Walker concedes King is a qualified accident
reconstruction expert.  King testified he reviewed the depositions of Walker,
Officer Woods, and Veda Cuffee,[3] as
well as the accident report, which contained Rangel’s opinions, and photographs
of the vehicles.  King also obtained measurements at the accident site.  His principal
opinion testimony was two-fold: (1) the accident most likely occurred during a
shallow-angled lane-change maneuver, instead of a vehicle entering the feeder
road directly from a stop sign, which would be at a greater angle; and (2)
therefore, it was most likely Walker moved into Rangel’s lane, made contact
with Rangel, and Rangel went into the parking lot where she struck a parked
car.  

According to King, the damage reflected in the
photographs indicated the vehicles collided at a roughly 10 to 20-degree angle,
which was inconsistent with the greater-degree angle described by Walker.  King
opined that the front bumper on Rangel’s truck appeared to be pushed forward,
and the contact damage to the front right fender of Walker’s cab was from front
to back and pushed in slightly toward the rear, meaning Walker was traveling at
a faster speed than Rangel and the vehicles impacted at a shallow angle. 
According to King, a greater angle of impact would have caused more of an
indentation to the sheet metal of Walker’s cab and would have caused the front
bumper of Rangel’s truck to be pushed in, not pulled out.  He explained that evidence
of where the vehicles came to rest after impact would be conclusive relative to
the direction of force, but this evidence was unavailable because Walker moved
her cab.  

King opined that Walker’s version of the accident was
inconsistent with his review of the objective evidence, but the investigating
officer’s diagram was consistent with his opinions. Specifically, King agreed
with Officer Woods’s depiction that the first impact occurred at or near Walker’s
right-rear door, and then Walker’s vehicle moved-up and pushed Rangel’s front
bumper forward.  King also testified that the photographs showed rubber
transferred to Walker’s cab.  He explained that if Rangel was turning her steering
wheel hard during the collision, causing her tire to stick out, it would
explain the rubber transfer.  According to King, the fact that Rangel’s tire
impacted Walker’s vehicle provided additional support for the claim that the
accident did not occur at the intersection.    

King inspected the accident site and measured from the
intersection at Roark Road to the location depicted on Officer Woods’s diagram
reflecting where Rangel’s truck struck the parked car.  King stated that these
measurements supported his conclusion that the accident did not occur at the
intersection.  King further testified that if Rangel struck Walker at the
intersection, the angle of impact would be at least 30 degrees.  King agreed
the investigating officer’s discovery of debris 30 or 40 yards from the
intersection rendered it more probable that the accident occurred at that
location, particularly if wind did not blow the debris.  King admitted weather
could have affected the debris, but conditions would necessarily be very windy
for the debris to move 30 or 40 yards. 

Walker attacks the reliability of the data underlying
King’s opinion testimony.  Specifically, Walker argues: (1) King admitted he
could not determine who made the accident-causing lane change or how fast the
vehicles were traveling[4];
(2) King went to the accident site three years after the accident and did not
see any vehicle debris or skid marks, or talk to any witnesses; (3) King never
inspected the damaged vehicles, but was relegated to reviewing photographs,
which he admitted could be very misleading; and (4) King admitted weather
conditions could have altered where the debris was located after the accident. 
We note King also admitted that the best way to reconstruct an accident is through
inspection of fresh physical evidence.   

King’s concessions regarding the limitations of photographs
did not affect the reliability of his observations, but were factors relevant
to the weight the jury gave King’s opinions based on his interpretation of
vehicular damage in the photographs.  See Keo v. Vu, 76 S.W.3d 725,
734 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (noting “factual
weaknesses underlying an expert’s causation opinion generally go to the
testimony’s weight, rather than its admissibility”).  During cross-examination,
King admitted the best method of determining causation would be through
inspection of the scene and the vehicles shortly after the accident.  See Exxon
Corp. v. Makofski, 116 S.W.3d 176, 195 (Tex. App.—Houston
[14th Dist.] 2003, pet. denied) (“Cross-examination remains ‘the traditional
and appropriate means of attacking shaky but admissible evidence.’” (quoting Gammill,
972 S.W.2d at 728)).  It was the province of the jury to decide how much
weight to afford King’s opinion that the photographs reflect a side-to-side
impact.  Furthermore, King’s opinion that the accident did not occur at the
intersection was supported by his review of photographs depicting damage
to the respective vehicles and his inspection of the angle of the intersection.

While reliable evidence supports King’s opinion that
the accident resulted from a lane-change maneuver, King’s opinion that Walker’s
vehicle entered the lane occupied by Rangel was unsupported.  King readily
admitted there was not enough evidence for an accident reconstruction expert to
determine which vehicle changed lanes or how fast the vehicles were
moving.  He even agreed that it was possible Rangel’s vehicle entered the lane
occupied by Walker’s vehicle.  Such admissions rendered King’s lane-change opinion
to be mere speculation, based on subjective interpretation of the evidence.  See
Ledesma, 242 S.W.3d at 39.  Succinctly, King agreed an analytical gap
existed between the evidence and his opinion that Walker drove her vehicle into
a lane occupied by Rangel’s vehicle.  See Gammill, 972 S.W.2d at 726.  

We also conclude King’s opinion that the accident
most likely occurred where debris was located was unsupported by reliable
data.  King admitted the location of debris was directly related to the
velocity of the vehicles and weather conditions, neither of which he could
determine.  He also admitted the location of Rangel’s car in the parking after
the impact did not necessarily reflect the direction of force from the impact. 

Accordingly, we hold the trial court abused its
discretion in admitting King’s conclusions that Walker drove into a lane
occupied by Rangel’s vehicle and that the accident most likely occurred where
vehicular debris was found.

 

 

C.        Harm
Analysis    

Having held that the trial court erred in admitting
certain of Officer Woods’s and King’s opinions, we now determine whether such
errors were harmful.

Even when an evidentiary ruling is erroneous,
we will not reverse the court’s judgment unless the ruling probably
caused rendition of an improper judgment.  Tex. R. App. P. 44.1(a); Nissan
Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004).  The Supreme Court
has recognized the impossibility of prescribing a specific test to determine
whether a particular error is harmful, and entrusts that determination to the
sound discretion of the reviewing court.  McCraw v. Maris, 828 S.W.2d
756, 757–58 (Tex. 1992); Lorusso v. Members Mut. Ins. Co., 603
S.W.2d 818, 821 (Tex. 1980).  “A reviewing court must evaluate the whole case
from voir dire to closing argument, considering the ‘state of the evidence, the
strength and weakness of the case, and the verdict.’”  Reliance Steel & Aluminum
Co. v. Sevcik, 267 S.W.3d 867, 871 (Tex. 2008) (quoting Standard
Fire Ins. Co. v. Reese, 584 S.W.2d 835, 841 (Tex. 1979)).  “[I]t is not
necessary for the complaining party to prove that ‘but for’ the exclusion of
evidence, a different judgment would necessarily have resulted.”  McCraw,
828 S.W.2d at 758.  The complaining party must only show “that the exclusion of
evidence probably resulted in the rendition of an improper judgment.”  Id. 
The erroneous admission of evidence is likely harmless if the evidence was
cumulative, or the rest of the evidence was so one-sided that the error likely
made no difference in the judgment.  Reliance Steel, 267 S.W.3d at 873. 
However, if erroneously admitted evidence was crucial to a key issue, the error
is likely harmful.  Id.  

In arguing an improper judgment resulted, Walker
asserts Rangel’s counsel emphasized Officer Woods’s and King’s erroneously-admitted
opinions during opening statement and closing argument.  See Nissan Motor,
145 S.W.3d at 144 (considering counsel’s efforts to emphasize erroneous
evidence in harm analysis).  According to Walker, Rangel’s focus on these
opinions was harmful because fault was hotly contested.  Finally, Walker
contends Officer Woods’s erroneously-admitted opinions had greater impact
because he was a disinterested witness.  See Nikoloutsos v.
Nikoloutsos, 47 S.W.3d 837, 839 (Tex. App.—Beaumont 2001, pet.
denied).

 We disagree with Walker’s assertion that Rangel
focused on these opinions during opening statement and closing argument.[5]
 In fact, Rangel’s counsel emphasized King’s admission that he could not determine
which vehicle changed lanes.[6] 
We further note that the trial court properly admitted King’s opinion that the
vehicles collided during a lane-change maneuver which did not occur at or near
the intersection. Nevertheless, causation is the pivotal issue on which this
case turns.  Despite King’s properly-admitted testimony supporting Rangel’s
version, the erroneously-admitted opinions of Officer Woods and King were
crucial to key issues of causation. See Reliance Steel, 267
S.W.3d at 873.  Moreover, the potential harm associated with multiple proffers
of inadmissible expert testimony by a disinterested, uniformed officer cannot
be discounted.  See Nikoloutsos, 47 S.W.3d at 839.  There
were four witnesses who testified regarding causation: Rangel, Walker, Officer
Woods, and King.  Of these four witnesses, two gave inadmissible testimony
pertaining to causation that supported Rangel’s version of the accident.  We
hold erroneous admission of Officer Woods’s and King’s opinions probably
resulted in rendition of an improper judgment.  Accordingly, we sustain
Walker’s sole issue.  

 

 

 

We reverse the trial court’s judgment and remand this
case for a new trial.

 

                                                                                                                                                                                                                                    

                                                            /s/        Charles
W. Seymore

                                                                        Justice

 

Panel
consists of Chief Justice Hedges and Justices Seymore and Sullivan









[1] Because the
dispositive issues are clearly settled in law, we issue this memorandum opinion. 
See Tex. R. App. P. 47.4.





[2] Dr. Karim was
called by Walker at trial, but testified she did not see who caused the
accident and did not know whether Walker was changing lanes. 





[3] King did not
elaborate on Veda Cuffee’s identity or what her testimony entailed.





[4] We construe
Walker’s pre-trial argument that King admitted “there is not enough evidence”
as an “analytical gap” objection.





[5] The only erroneously-admitted testimony Rangel’s
counsel emphasized was Officer Woods’s opinion that the accident occurred where
the debris was found.  

 





[6] As discussed above, King testified during direct
examination that Walker was the party who changed lanes, but admitted on cross
examination he could not determine which party changed lanes.