# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00086-CV

**Stanley Asher Wigley, Appellant**

**v.**

**Shannon Medical Center a/k/a Shannon West Texas Memorial Hospital;
and Emmette Flynn, M.D., Appellees**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. C140288C, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Stanley Asher Wigley appeals from the trial court's order excluding the opinions of his expert witness and granting the no-evidence motion for summary judgment filed by Shannon Medical Center a/k/a Shannon West Texas Memorial Hospital (the Hospital) and Emmette Flynn, M.D. (collectively, the Defendants). In three appellate issues, Wigley contends that the trial court abused its discretion in striking his expert as unqualified and erred in granting the Defendants' summary-judgment motion. We will affirm the trial court's order.

## BACKGROUND

The following facts are not disputed on appeal. On December 24, 2011, Wigley was involved in a serious vehicle accident. He was taken to the emergency room at the Hospital as a trauma patient, and Dr. Flynn was Wigley's attending physician. Wigley had a complete spinal cord

injury, was rendered quadriplegic, received life-preserving surgeries and intensive treatment, was placed on a ventilator, and was unable to eat or move for an extended time. He also developed pressure ulcers (commonly known as bed sores) during his stay at the Hospital.

After being stabilized and released, Wigley brought health care liability claims against Dr. Flynn and the Hospital, alleging that Dr. Flynn and the Hospital's intensive care unit (ICU) nurses negligently failed to prevent the pressure ulcers from developing. Wigley designated Dr. Lige B. Rushing, Jr. as his expert. Dr. Rushing filed an expert report, *see* Tex. Civ. Prac. & Rem. Code § 74.351(a), and the Defendants did not initially object to the report. Later, after taking Dr. Rushing's deposition, the Defendants filed objections to Dr. Rushing's qualifications, a motion to exclude Dr. Rushing's opinions, and a no-evidence motion for summary judgment. *See id.* §§ 74.401(e), 74.402(f), 74.403(d). The Defendants' summary-judgment motion argued that, once the trial court excluded Dr. Rushing's opinions, no evidence would remain to support Wigley's health care liability claim.

The trial court granted the Defendant's motion to exclude Dr. Rushing's opinions and summary-judgment motion. In its order, the court made the following findings:

> 1. Lige B. Rushing, Jr., M.D. does not have the knowledge of accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in this claim (that is, he does not have the practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant);
>
> 2. Lige B. Rushing, Jr., M.D. is not qualified on the basis of training or experience to offer an expert opinion regarding the accepted standard of medical care for a Trauma/Critical Care Surgeon, a hospital, or a nurse providing care for a patient who suffered a spinal cord injury as the result of a traumatic accident;

2

3.  Lige B. Rushing, Jr., M.D. is not qualified on the basis of training or experience to offer an expert opinion regarding causation or damages in this particular instance;

4.  The opinions of Lige B. Rushing, Jr., M.D. will not aid the jury in this case, and the probative value of said opinions is substantially outweighed by the possibility of prejudice and confusion; and

5.  The testimony and opinions of Lige B. Rushing, Jr., M.D. should be excluded.

The order stated that "this expert witness will not be allowed to testify as a witness in the trial of this cause" and that, "because the opinions of Lige B. Rushing, Jr., M.D. have been excluded, [Wigley] is left with no evidence of the breach of the standard of care or of causation which makes the Defendants' request for summary judgment proper." The court dismissed all of Wigley's causes of action. This appeal followed.

## DISCUSSION

Wigley challenges the trial court's summary judgment. *See* Tex. R. Civ. P. 166a(i) (describing no-evidence motion for summary judgment). We review a trial court's grant of summary judgment de novo. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). In this case, the correctness of the trial court's summary judgment depends on whether the court properly excluded Dr. Rushing's opinions, because Dr. Rushing provided Wigley's sole evidence concerning essential elements of Wigley's claim, including the standard of care, breach of that standard, and causation of Wigley's injuries. *See Texas W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179–80 (Tex. 2012) (describing elements of a health care liability claim). We review the trial court's decision to exclude Dr. Rushing's opinion for an abuse of discretion. *See Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996)

3

("The qualification of a witness as an expert is within the trial court's discretion. We do not disturb the trial court's discretion absent clear abuse.") (citations omitted); *Hoffman v. Samples*, No. 10-17-00196-CV, 2017 WL 4413437, at \*4 (Tex. App.—Waco Oct. 4, 2017, no pet. h.) (mem. op.) ("[W]e defer to the trial court on close calls concerning an expert's qualifications.").

In a suit involving a health care liability claim against a physician, an expert witness is only qualified to opine "on the issue of whether the physician departed from accepted standards of medical care" if the witness:

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Tex. Civ. Prac. & Rem. Code § 74.401(a). Likewise, in a suit against a health care provider, an expert witness is only qualified to opine "on the issue of whether the health care provider departed from accepted standards of care" if the witness:

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

4

*Id.* § 74.402(b). Finally,

> in a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

*Id.* § 74.403(a); *see* Tex. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.").

Dr. Rushing's expert report and curriculum vitae show that he is board certified in, and actively engaged in the practice of, internal medicine, rheumatology, and geriatrics. His report asserts the following regarding his familiarity with pressure ulcers and Wigley's case:

> In the regular course of my medical practice I have occasion to diagnose and treat patients with conditions similar to or identical to Mr. Wigley. During the course of my career I've provided primary medical care to more than 10,000 patients in hospitals, nursing homes, assisted living facilities. I have provided care to patients who, like Mr. Wigley, were at high risk for the development of pressure ulcers. I have written orders for the care and treatment of these patients and have supervised the execution of these orders by RNs LVN's and CNA's who were assigned to provide the hands on care to my patients. I am therefore intimately familiar with the standards of care for the RNs, LVN's and CNA's who were providing care to Mr. Wigley.
>
> Based on the comprehensive assessment of the resident, the facility must insure that a resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable and a resident having pressure sores receive the necessary treatment and services to promote healing, prevent infection, and prevent new sores from

developing. There is nothing in Mr. Wigley's clinical condition to indicate that his pressure ulcers were unavoidable.

\*\*\*

The care and treatment rendered to Mr. Wigley by the Shannon Medical Center and its staff fell below the accepted standards of care in the following ways:

1. Failed to prevent Mr. Wigley's pressure ulcers.

2. Failed to have an effective pressure ulcer prevention program.

3. Failed to keep appropriate documentation.

It is my opinion that the failures outlined above proximately caused Mr. Wigley's pressure ulcers.

This report shows that Dr. Rushing is a physician who is generally familiar with pressure ulcers. However, nothing in Dr. Rushing's report, curriculum vitae, or deposition indicate that he is familiar with the prevention or treatment of pressure ulcers in a trauma or ICU context. During his deposition, Dr. Rushing affirmed that he does not "hold [himself] out" as an expert or specialist in the areas of critical care, critical care surgery, emergency medicine, emergency surgery, intensive care medicine, spinal cord trauma, spinal injury treatment, spinal surgery, or several other fields.

An expert witness need not necessarily "have the same specialty as the health care provider she evaluates." *See Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 n.37 (Tex. 2017); *Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("Courts of appeals have also recognized that an expert witness need not be a specialist in the particular branch of the medical profession for which the testimony is offered."). Nevertheless,

an expert must establish that he "has 'knowledge, skill, experience, training, or education' regarding *the specific issue* before the court which would qualify the expert to give an opinion *on that particular subject*." *Broders*, 924 S.W.2d at 153 (emphasis added; quoting Tex. R. Evid. 702).

For example, in *Christus Spohn Health System Corp. v. Castro*, No. 13-13-00302-CV, 2013 WL 6576041 (Tex. App.—Corpus Christi Dec. 12, 2013, no pet.) (mem. op.), Castro, the plaintiff, was injured in a serious vehicle accident and developed pressure ulcers while a patient at the defendant hospital. Castro sued the hospital and filed two expert reports, both written by "geriatric specialists with extensive experience in caring for pressure ulcers in hospital and nursing home settings." *Id.* at *1. The hospital objected to the experts' qualifications and to their reports. In deciding that the experts were not qualified to opine concerning the pressure ulcers Castro developed while in ICU, our sister court stated the following:

> Spohn [the defendant hospital] does not dispute that du Bois is an expert in the field of nursing home care and Dr. Starer is an expert in the field of geriatrics and nursing home care, or that these fields regularly involve the prevention and treatment of pressure ulcers. Rather, Spohn argues that neither expert is practicing or has otherwise relevant experience in ICU/trauma care, which is the relevant field of practice in this case. We agree . . . . [U]nder the facts alleged in his own petition, it is clear that the care provided to Castro by Spohn was trauma and ICU care. Castro's pressure ulcer developed in this context, and his experts must be qualified to opine on his injury in the context of these conditions.

*Id.* at *4.

The court rejected Castro's argument that the hospital was demanding overly specific expertise:

> Castro argues that Spohn's characterization of the relevant field of practice in this case sets the bar too high, that Spohn is essentially requiring Castro to find a

7

specialist in the treatment of "a 50–year–old quadriplegic with diabetes, PEG tube feeding, with a tracheostomy [sic] and neurologic deficits, with prior cardiac arrest and suffering from bacterial infections." This characterization overstates what is required in this case. Although it is true that an expert need not be a practitioner in the same specialty as the defendant to qualify as an expert, he or she is only competent if he or she has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant. In other words, the proper inquiry in assessing an expert's qualifications to submit a report is not his or her area of expertise but his or her familiarity with the specific issues involved in the claim before the court. Here, as discussed above, Castro's petition includes facts showing that the circumstances under which he developed his pressure ulcer involved trauma and ICU treatment of his severe injuries following the accident. His expert must be qualified to render an opinion on the applicable standard of care in those circumstances—i.e., the prevention and/or treatment of pressure ulcers in the context of ICU/trauma care. We are not persuaded by Castro's argument to the contrary.

*Id.* at \*4 (citations and footnote omitted).

Finally, the court explained that it could not conclude "that the information provided in [the experts' reports] show them to be practicing in the relevant field of practice or show them to have any other relevant experience giving them knowledge of the standard of care for the specific conditions in this case." *Id.* at \*5 (citation omitted); *see Hickory Trail Hosp., L.P. v. Webb*, No. 05-16-00663-CV, 2017 WL 677828, at \*5 (Tex. App.—Dallas Feb. 21, 2017, no pet.) (mem. op.) ("When a physician fails to state in his expert report or affidavit that he has knowledge of the standard of care applicable to the specific types of health care providers involved in the claim, or that he has ever worked with or supervised the specific types of health care providers involved in the claim, the physician is not qualified on the issue of whether the defendant health care provider departed from the accepted standards of care.") (quotation marks omitted); *Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 411 (Tex. App.—Fort Worth 2003, no pet.) ("At most, Dr. Bronston's qualifications and testimony demonstrate that he was qualified to give an expert opinion concerning

8

the standard of care applicable to a physician's decision of whether to administer t-PA to a stroke patient. The record does not show that Dr. Bronston possessed any special knowledge about what protocols, policies, or procedures a hospital of ordinary prudence, with the Hospital's capabilities, would have had in place.").

Similarly, Dr. Rushing provided no information showing that he is qualified to testify concerning pressure ulcers that developed while Wigley was a trauma and ICU patient at the Hospital. The trial court was not required to infer from Dr. Rushing's general familiarity with pressure ulcers in other contexts that he is qualified to address pressure ulcers that develop in a trauma and ICU context. *See Webb*, 2017 WL 677828, at *5 ("The rule is clear, 'Qualifications cannot be inferred.'") (quoting *Millbrook Healthcare & Rehab. Ctr. v. Edwards on behalf of Estate of Cullens*, No. 05-14-00202-CV, 2015 WL 558305, at *3 (Tex. App.—Dallas Feb. 11, 2015, no pet.)). Therefore, given the record before us and our standard of review, we cannot conclude that the trial court committed a clear abuse of discretion in excluding Dr. Rushing's opinions. *See Broders*, 924 S.W.2d at 151 ("We do not disturb the trial court's discretion absent clear abuse."). Furthermore, because, in the absence of Dr. Rushing's opinions, Wigley presented no evidence concerning the Defendants' standard of care, the alleged breach of that standard, or the causation of his injuries, we conclude that the trial court did not err in granting the Defendants' motion for summary judgment. Accordingly, we overrule Wigley's appellate issues.[1]

---

[1] The Defendants also argue that we should affirm the trial court's judgment because Wigley's opening brief failed to address an independent ground on which the trial court excluded Dr. Rushing's opinions and granted summary judgment (namely, the Defendants' objections under Texas Rule of Evidence 403). Because we have overruled Wigley's issues, we need not address this argument.

**CONCLUSION**

We affirm the trial court's order excluding Dr. Rushing's opinions and granting the Defendants' no-evidence motion for summary judgment.

_____

Scott K. Field, Justice

Before Justices Puryear, Field, and Bourland

Affirmed

Filed:   December 1, 2017

10